# DECISIONS

## OF THE

# Supreme Court of Florida.

## JUNE TERM, A. D. 1898.

STATE OF FLORIDA *ex rel.* WILLIAM H. REYNOLDS AS
COMPTROLLER OF THE STATE OF FLORIDA, AND
JOHN A. PEARCE, AS SHERIFF OF LEON COUNTY,
FLORIDA, PLAINTIFFS, VS. JOHN F. WHITE, JUDGE
OF THE THIRD JUDICIAL CIRCUIT OF FLORIDA, AND
THE FLORIDA CENTRAL AND PENINSULAR RAIL-
ROAD COMPANY, DEFENDANTS.—PROHIBITION.

1. A decree which disposes of every question involved in a
   chancery case, leaving nothing open for future decision, and
   contemplating no further action in the cause other than to
   enforce the decree, is final.
2. The judgment and mandate of an appellate court acts directly
   upon the decree of an inferior court appealed from, without
   the intervention of any action on the part of the inferior
   court.
3. The maxim *id certum est quod certum reddi potest* will sustain
   a decree in equity which refers to record data in the suit for
   determining what is otherwise uncertain on the face of the
   decree.
4. Where the official capacity of a party defendant to a bill in
   equity had ceased before the entry of a decree in his name,
   and subsequent to the entry of such decree, the court upon
   application of complainant made the successor of such former
   official a party defendant in the place of such former official,
   the defect of parties at the entry of such decree can not be

State v. White and F. C. & P. Ry.—Statement of Case.

made the basis for a bill of review at the instance of the complainant.

5. Circuit Courts have no jurisdiction of bills to review decrees entered by them in obedience to the mandate of an appellate court, because of errors of law or fact alleged to have been committed by such appellate court in rendering its judgment, and the attempted exercise of such jurisdiction will be restrained by prohibition.

6. Where this court upon an appeal held that a Circuit Court should not entertain jurisdiction of a bill to review for newly discovered matters a decree entered by it in pursuance of this court's mandate on a former appeal, without permission from this court granted one of the parties to apply to the Circuit Court for leave to file such a bill, and thereafter the Circuit Court granted leave to one of the parties to file a bill to review the entire decree for newly discovered matters, although the permission given by this court embraced a review of a part only of the decree, this court will under its power to issue all writs "necessary or proper to the complete exercise" of its jurisdiction, grant a writ of prohibition to restrain the proceedings in so far as they seek to review those features of the decree not embraced in the permission granted.

7. Where the want or excess of jurisdiction relates to the subject-matter and is apparent upon the face of the proceedings of an inferior court• sought to be prohibited, and that court has made some order in the exercise of such unauthorized jurisdiction, prohibition will lie, even though no plea to the jurisdiction has been tendered to and ruled upon by the inferior court.

8. Prohibition lies to restrain an excess of jurisdiction as well as to prevent a court from proceeding in a case where it has no jurisdiction whatever.

9. Where a party applies for a prohibition and asks the court to prohibit another court more than he ought to ask for, yet if part of his request is well founded, the court ought to mould the prohibition and limit it to so much of his request as is proper to be granted.

This is a case of Original Jurisdiction.

*Statement.*

On November 2, 1892, the Florida Central & Pen-

insular Railroad Company filed its bill of complaint in the Circuit Court of Leon county against William D. Bloxham as Comptroller of the State of Florida, and John A. Pearce as Sheriff of Leon county, Florida, praying that a decree be rendered, adjudging:

1st. That the entire line of railroad from Jacksonville to Chattahoochee, and branches to Monticello and St. Marks, and the lines of its road from Fernandina to Cedar Keys, and from Waldo to Plant City, are covered by the exemption from taxation provided in the Internal Improvement Act.

2nd. That its several lines of railroad are exempt from taxation for State and county purposes for the period of thirty-five years from dates, as follows: The line from Jacksonville to Lake City; the line from Lake City to Quincy, with branches from Drifton to Monticello, and the line from Tallahassee to St. Marks from —— day of ————, 1866, the date of their completion; the line from Fernandina to Cedar Keys from —— day of ————, 1864, the date of its completion; the line from Waldo to Ocala from —— day of ————, 1877, the date of its completion; the line from Ocala to Plant City from the date of its completion to the waters of Tampa Bay; the line from Quincy to Chattahoochee from the —— day of ————, 1874, the date of its completion.

3rd. That its lines of road and every part thereof are not subject to the payment of the State and county taxes assessed against them in 1885 for the years 1879, 1880 and 1881.

4th. That each and every the assessments made by William D. Barnes, Comptroller, for taxes for State and county purposes on its lines of road for each of the years from 1879 to 1886 inclusive are illegal and void.

5th. An injunction directed to Bloxham, Comp-

troller, and Pearce, Sheriff, restraining them and each of them from making any levy or sale, or attempting the same, on the property of the lines of complainant's railroad, on account of any of the assessments for taxes made thereon for the years from 1879 to 1886 inclusive, and from executing, or attempting to execute, any warrants of sale issued under said assessments or either of them, and restraining said Bloxham, Comptroller, from hereafter making any further assessments for such purposes or for any purposes of taxation upon the lines of complanant's road which are upon the routes between Jacksonville and Chattahoochee, or branches therefrom to Monticello or St. Marks, or on the line from Fernandina to Cedar Keys, or from Waldo to the waters of Tampa Bay, until the expiration of thirty-five years from the date of the completion of said several lines.

6th. That said Bloxham do pay to complainant all moneys which have been improperly collected from it on account of said assessments for taxes, and such other and further relief as to equity may appertain.

Such proceedings were had subsequent to the filing of said bill that on November 25, 1893, a decree was entered in said cause by Hon. John F. White, Judge of the Third Judicial Circuit (the Judge of the Second Circuit being disqualified), as follows:

1st. That the several lines of railroad now owned by complainant and described in the bill of complaint, to-wit: the line from Lake City to Quincy with branches to Monticello and St. Marks; the line from Lake City to Jacksonville; the line from Waldo to Ocala, and the line from Ocala to Tampa are, and were in 1885, each and all subject to taxation as other property in the State of Florida, even though said lines of railroad were built on the lines indicted by the general Internal Improvement Act of 1855-6, Chapter 610 laws of Florida, and

under the provisions contained in said general Internal Improvement Act, and at the time or times severally alleged in complainant's bill.

2nd. That the several lines of railroad aforesaid, with the branches aforesaid, were not exempt from taxation for the years A. D. 1882-3-4, and that the taxes thereon demanded of the Florida Railway & Navigation Company, under an assessment in A. D. 1885, and paid under protest as alleged by complainant, were lawfully exacted and collected from said company, notwithstanding portions of some of the aforesaid lines of railroad or all of the same were constructed under the provisions of the general Internal Improvement Act of Florida, Chapter 610, laws of Florida, and notwithstanding said lines of railroad were built on the lines indicated thereby and therein.

3rd. That the said lines of railroad properties are subject to taxation for the year A. D. 1886, and that complainant's prayer that defendants be enjoined from assessing and collecting the same for said year be and the same was thereby denied.

4th. That the taxes now attempted to be collected on said several lines of railroad owned by complainant, by the defendants, Bloxham, Comptroller, and Pearce, Sheriff, under assessment made thereon in A. D. 1885, by virtue of a statute passed A. D. 1885, Chapter 3558, laws of Florida, on the aforesaid lines of railroad and branches now the property of the complainant, but which were so assessed on the same for the years A. D. 1879, 1880 and 1881, and which were assessed on them as the property respectively of the Jacksonville, Pensacola & Mobile Railroad, the Florida Central Railroad and the Transit Peninsular Railroad Companies, were and are not liens on said several lines of railroad for the several years aforesaid for which said assessments were

made, and were and are not assessable against the Florida Railway and Navigation Company; that said statute under which the assessments were made for the years last aforesaid was a special statute for the collection of general revenue, and did not provide or attempt to provide a uniform, equal and just assessment or collection of taxes for the years A. D. 1879, 1880 and 1881, and that so much and such part of said statute of 1885, Chapter 3558, laws of Florida, as attempts to provide for an assessment and collection of taxes for the years A. D. 1879, 1880 and 1881 is, as to complainant's said property unconstitutional and void, and the State of Florida by its Legislature having repeatedly and expressly limited its right to assess property, omitted from assessment for taxes for more than three years next preceding the assessment thereof, the said assessments so made as aforesaid or attempted to be made on the said properties of complainant for the years A. D. 1879, 1880 and 1881, under the provisions of the act aforesaid, and the said warrant and tax levy were thereby adjudged and decreed to be unequal, unlawful, unconstitutional and void.

5th. That defendants Bloxham, Comptroller, and Pearce, Sheriff, their agents and servants, and each and every of them, be and they were thereby perpetually enjoined from selling or attempting to sell the said several lines of railroad, or any part or parts thereof, under said assessment for the years 1879, 1880 and 1881, and from in any way or manner attempting to collect the said taxes for said years last aforesaid.

6th. That defendants pay the costs of this cause to be taxed by the clerk of the Circuit Court of Leon county.

From this decree an appeal was taken. This court held (35 Fla. 625, text 734), that the lines of complainant's railroad from Jacksonville to Chattahoochee with

St. Marks and Monticello branches, the line from Fernandina to Cedar Keys, and the line from Waldo to Ocala were subject to the taxes sought to be collected from them; but that the line from Ocala to Wildwood was subject to such taxes only for the year 1881. By the decision of this court in that case the decree of the Circuit Court holding the lines of railroad described therein as subject to taxation in 1882, 1883, 1884, 1885 and 1886, and refusing injunction against the assessment and collection of taxes thereon for 1886, and refusing to direct return of taxes paid for 1882, 1883 and 1884 by the Florida Railway & Navigation Company was affirmed, except that portion which held the line from Ocala to Tampa subject to taxation as aforesaid; only that part of the latter line which extends from Ocala to Wildwood being subject to such taxation, and the decree was reversed in so far as it made subject to taxation for the years named that portion of the line from Ocala to Tampa described in the bill of complaint as the line from Wildwood to Plant City, and the line from Plant City to Tampa; and so much of the decree as held that the statute under which the assessment was made, and under which proceedings were being taken by defendants to collect taxes from complainant, was a special statute for the collection of general revenue, and unconstitutional and void, was reversed; likewise so much of the decree as held that the several lines of railroad sought to be subjected to the payment of taxes were not assessable against the Florida Railway & Navigation Company for the years 1879, 1880 and 1881, and which enjoined the defendants from selling or attempting to sell the same under the assessment aforesaid, or any part thereof, for taxes for said years, or from in any manner attempting to collect said taxes. It was further held that the decree of the Circuit Court should have en-

joined the collection of taxes only upon the following portions levied upon, *viz*: that portion levied upon and advertised by the defendants as the line from Jacksonville to Tampa, which was described in the bill of complaint as the line from Wildwood to Plant City, and the line from Plant City to Tampa, and that defendants might likewise have been properly enjoined as to the taxes for the years 1879 and 1880 upon the line from Ocala to Wildwood. The cause was remanded for further proceedings in accordance with the opinion of this court, and the mandate was sent down in regular course. Without entering a decree in accordance with the mandate, the Circuit Court granted leave to complainant to file a supplemental bill in the nature of a bill of review. The bill was filed and from an order made February 20, 1896, overruling a demurrer thereto, an appeal was taken to this court. It was held on this appeal (39 Fla. 243, 22 South. Rep. 697,) that when an appellate court affirms a decree of the lower court, or when such decree is modified on appeal, either as to questions of law or fact necessarily involved, with directions for further proceedings consistent with the opinion, the lower court has no authority to open the case for a new trial or to enter any other judgment than that directed to be entered, unless authority to do so be expressly given by the appellate court, and upon the ground that leave to apply for permission to file the supplemental bill of review had not been obtained from this court, it was held that the Circuit Court had no authority to permit to be filed or to consider the supplemental bill. The decree overruling the demurrer was reversed and the cause remanded with directions to the Circuit Court to dismiss the supplemental bill in the nature of a bill of review, and to enter a final decree in accordance with the former judgment of this court; and an order was entered permitting

the railroad company, within ninety days after the entry of such decree, to apply to the Circuit Court for leave to file a bill of review to the extent of the line of railroad mentioned in the decree from Jacksonville to Chattahoochee and branches, on account of alleged newly discovered matter.

On June 19, 1897, Judge White entered a decree in the suit as follows:

1st. That the decree made February 20, 1896, overruling the demurrer to plaintiff's supplemental bill, in the nature of a bill of review, be and the same is hereby reversed and set aside, and that said demurrer be sustained and said bill dismissed at plaintiff's costs.

2nd. That so much of the decree made November 25, 1893, as holds the lines of railroad therein described subject to taxation in 1882, 1883, 1884, 1885 and 1886, and refuses an injunction against the assessment and collection of taxes thereon for 1886, and refuses to direct a return of taxes paid for 1882, 1883 and 1884 by the Florida Railway & Navigation Company, except that portion which holds the line from Ocala to Tampa subject to taxation as aforesaid, is affirmed.

3rd. That said decree is reversed in so far as it makes subject to taxation for the years named that portion of the line from Ocala to Tampa, described in the bill of complaint as the line from Wildwood to Plant City and the line from Plant City to Tampa.

4th. That so much of said decree as holds that the statute under which the assessment was made and under which proceedings are taken by the defendants to collect taxes of the complainant is a special statute for the collection of general revenue and unconstitutional and void, is also reversed.

5th. That so much of said decree as holds that the several lines of railroad sought to be subjected to the

payment of taxes herein were not assessable against the Florida Railway & Navigation Company for the years 1879, 1880 and 1881, and which enjoins the defendants from selling, or attempting to sell, the same under the assessment aforesaid, or any part thereof, for the taxes for the said years, or from in any manner attempting to collect said taxes, is also reversed.

6th. That the said defendants W. D. Bloxham, the Comptroller, etc., and John A. Pearce, as Sheriff, etc., their agents and servants, and each and every of them, be and they are hereby perpetually enjoined and restrained from selling, or attempting to sell, that portion of the plaintiff's railroad from Jacksonville to Tampa, and described in the bill of complaint as the line from Wildwood to Plant City, and the line from Plant City to Tampa, under said assessment for the years 1879, 1880 and 1881, and the line from Ocala to Wildwood under said assessment for the years 1879 and 1880.

7th. That the plaintiff pay the costs of this suit to be taxed by the clerk.

On September 7, 1897, the railroad company served notice upon William H. Reynolds as Comptroller, and Pearce as Sheriff, that it would apply to Judge White at a fixed time for leave to file a bill of review under the permission granted to make such application by the Supreme Court in its opinion and by its mandate sent down on May 24, 1897, the grounds of such application to be set out in the petition to be presented at such hearing. On the date named in the notice, September 13, 1897, the railroad company filed its petition setting out therein the original bill and exhibits filed November 2, 1892, the proceedings had thereupon and the decree of November 25, 1893. It also alleged that there was an appeal from that decree; that this court reversed same in part and affirmed and modified other portions thereof

and commanded further proceedings to be had according to right, justice, the judgment of this court and the laws of Florida. It also alleged the filing by the railroad company of the supplemental bill, in the nature of a bill of review, the filing of a demurrer thereto, the appeal from the order overruling such demurrer, and the mandate of this court upon its judgment rendered on that appeal, as well as the mandate issued upon the former judgment of this court, are set forth in extenso, as well as the decree entered by the Circuit Court June 19, 1897, which purports to have been entered "in obedience to the mandate of the Supreme Court of the State of Florida." The petition also alleged that William H. Reynolds on January —, 1897, was duly qualified and commissioned as Comptroller of Florida, and that at the time of the entry of the decree of June 19, 1897, the term of office of William D. Bloxham as such Comptroller had expired. The petition then sets forth what purports to be newly discovered matters relating to the ownership and possession of the line of railroad from Jacksonville to Chattahoochee river with branches to Monticello and St. Marks, during the period of time from September, 1879, to February, 1882, and alleges further that this court reached its conclusion that this line was during said time owned and operated by Edward J. Reed and associates, by a wholly mistaken view of the facts not in issue in the case or submitted, and upon an interpretation of the statements of the original bill that is entirely at variance with the facts as they existed and the understanding and purport of such statements at the hearing below. It further alleged that certain stated allegations of facts were made in the original bill and not denied by the answer thereto, which it is claimed in the petition constituted petitioner a *bona fide* purchaser for value of the whole of its property formerly owned by the

Florida Railway & Navigation Company, and that it should have been so adjudged by the court and decreed to hold said property exempt from the taxes assessed for 1879, 1880 and 1881, and the petitioner suggests and assigns the failure 'of the court to so decree as error in law, apparent on the face of said decree for which same should be reviewed and reversed.   The petition further alleges that the decree of June 19, 1897, as a final decree is informal and imperfect, and within itself unintelligible as it can only be read in connection with and by reference to the decree of November 25, 1893, and that it was rendered for and against W. D. Bloxham as Comptroller, who was not at the time Comptroller of the State of Florida, and there were no proper parties to said cause at the date of the rendition of the decree.   The petitioner prayed "that leave be granted it to file a bill of review to review the aforesaid final decree rendered as herein aforesaid, upon the grounds of the newly discovered evidence aforesaid and the error in law appearing upon the face of the said decree aforesaid;" and that petitioner be permitted by way of supplement to make William H. Reynolds as Comptroller a party thereto, in lieu of the original defendant W. D. Bloxham, who has ceased to be such Comptroller.

On September 13, 1897, Judge White made an order reciting that the cause came on to be heard upon petition of complainant for leave to file a bill of review in said cause, and for an order to substitute William H. Reynolds, Comptroller, in place of William D. Bloxham, late Comptroller, and decreeing that "William H. Reynolds be and is hereby made party defendant in place of William D. Bloxham, late Comptroller and defendant herein," and "that the complainant be and he is hereby allowed to file a bill of review in this cause, as prayed for in its said petition."

The railroad company thereafter on September 18th, 1897, filed its bill of review containing substantially the same allegations as in the petition, and praying that the suit be revived against William H. Reynolds as Comptroller; that the final decree and all proceedings therein be reviewed, revised and set aside; that each and every of the assessments made by W. D. Barnes, late Comptroller, for State or county taxes on the lines of road and railroad property for each of the years 1879, 1880 and 1881, be decreed to be illegal and void; that said property be declared exempt from such taxes, and that an injunction issue to restrain any sale on account of such assessments. To this bill a demurrer was interposed by relators November 1, 1897, one ground of same being that no leave of this court had been obtained for the filing of a bill to review any part of the final decree, except that part relating to the line of road extending from Jacksonville to Chattahoochee and branches. This demurrer has never been brought to hearing.

On March 22, 1898, the relators filed in this court their suggestion for a writ of prohibition, and made a part thereof a certified transcript of the proceedings in said cause, from which we have extracted this statement of the facts. The suggestion prays that a writ of prohibition issue to defendants commanding them to desist from taking any further proceedings in or otherwise entertaining jurisdiction against relators. Upon the filing of this suggestion a rule to show cause was issued, and the railroad company has interposed a demurrer to the suggestion upon the following grounds:

1. The suggestion sets forth no sufficient ground for the writ of prohibition.

2. The suggestion shows no exercise of jurisdiction by the Circuit Judge beyond authority of law.

3. Leave to file the bill was granted, the bill filed, and jurisdiction entertained by the court below after notice to relators, without objection from them.

4. The Circuit Court had jurisdiction of the subject-matter and the right of discretion as to the filing of said bill.

5. The Circuit Court, being a court of general jurisdiction, had and exercised by leave of this court the right to permit the filing of a bill of review and is in the exercise of proper jurisdiction over such bill of review, with power to decide the cause. If errors occur in the progress of the cause, they may be corrected by this court on appeal. And this is the proper remedy, and not by prohibition.

6. The suggestion of relators fails to show that relief on the ground of a want of jurisdiction has been unsuccessfully sought in the court below, and it can not be presumed that the Circuit Court will go beyond its legitimate powers.

7. The review sought was right and proper to be had (a) because no final decree was properly entered in said cause; (b) because the decree of June 19, 1897, purporting to be a final decree as entered, was and is informal and imperfect and within itself unintelligible, as it can only be read in conection with and by reference to another decree rendered in said cause on November 25, 1893. That it was rendered for and against W. D. Bloxham as Comptroller, who was not at the date of such entry the Comptroller of the State of Florida, and there were no proper parties to said cause at the date of the rendition of said decree.

*The Attorney-General*, for Relators.

*John A. Henderson and T. L. Clarke*, for Defendants.

CARTER, J.:

1. It is insisted by the seventh ground of demurrer that the review sought by the bill filed by defendant was proper, because (a) no final decree was properly entered in the cause; (b) the decree of June 19th, 1897, was informal and imperfect, and within itself unintelligible, as it can only be read in connection with and by reference to another decree rendered in the same cause November 25, 1893; (c) that William D. Bloxham, one of the parties to said decree, had ceased to be Comptroller of the State of Florida at the time it was entered.

A. If, as contended by defendant, the decree of June 19, 1897, is not a final one, then the bill of review filed was premature; for it is an elementary proposition that such a bill lies only to a final decree. Putnam v. Lewis, 1 Fla. 455; Owens v. Love, 9 Fla. 325; 2 Beach Mod. Eq. Pr., §852; Story's Eq. Pldg., §408 a. If this was the only objection to the proceeding sought to be prohibited, we might well leave the relators to their remedy by appeal; but we think other grounds for prohibition exist and that the objections to this decree are without force. It is argued by defendant that a decree is final only when it fully decides and disposes of the whole merits of a cause and reserves no further questions or directions for the future judgment of the court; but counsel fail to point out any matter in issue not disposed of by this decree, and there certainly is no reservation therein of any question for the future judgment of the court. It is said that the decree is a repetition and recital of the mandate of this court upon the first appeal, reversing certain features of the former decree of November 25, 1893, and leaving the case exactly where it was before that decree was rendered. We do not so construe it. It makes a final disposition of the

supplemental bill in the nature of a bill of review; adjudges the entire costs of suit against defendant, reverses those features of the decree of November 25, 1893, which held that the lines of railroad from Wildwood to Plant City, and from Plant City to Tampa, were subject to taxation, and grants a perpetual injunction against the enforcement of assessments on those lines, as well as another named.  It also reverses that portion of the former decree which held the statute to be unconstitutional under which the assessments were made, and also certain features of the former decree which held that the several lines of railroad sought to be subjected to the payment of taxes were not assessable against the Florida Railway & Navigation Company for 1879, 1880 and 1881, and which enjoined the collection of taxes for those years.  It affirms so much of the former decree as held the lines of railroad therein described subject to taxation for certain years named; which refused an injunction against the collection thereof, and which refused to direct a return of taxes collected from the Florida Railway & Navigation Company.  It seems to us that this decree finally disposes of every question involved in the case.  It certainly leaves nothing open for future decision, nor does it contemplate that any further action is to be had in the cause, other than to enforce the decree rendered.  It was wholly unnecessary for the Circuit Court to "reverse" or "affirm" any portion of its former decree, as the judgment and mandate of this court, upon the appeal therefrom, operated directly upon that decree without the intervention of any action of the Circuit Court. Merritt v. Jenkins, 17 Fla. 593.  While there may be some technical objections to the form of the decree of June 19, 1897, it is, when construed in connection with

State v. White and F. C. & P. Ry.—Opinion of Court.

the pleadings, the former decree and the mandate from this court, a definite and intelligible final decree.

B. The decree of November 25, 1893, referred to in the decree of June 19, 1897, was a matter of record in the same suit, and the maxim *id certum est quod certum reddi potest* will sustain a decree in equity which refers to record data for determining what is otherwise uncertain on the face of the decree. 5 Ency. Pl. & Pr., p. 1067, and authorities cited; Shepard v. Kelly, 2 Fla. 634.

C. If there is any merit in the contention that a defect of parties existed at the time of the rendition of the decree of June 19, 1897, because Governor Bloxham had ceased to be Comptroller, it is difficult to perceive the ground upon which such defect can avail the defendant in this proceeding or become the basis of a bill of review. Governor Bloxham had not ceased to be a party to the suit, although his official capacity had ceased. The decree was entered in his name as Comptroller, but afterwards, and before the bill of review was filed, Comptroller Reynolds, upon defendant's application "for an order to substitute William H. Reynolds, Comptroller, in place of William D. Bloxham, late Comptroller," was "made party defendant in place of William D. Bloxham, late Comptroller and defendant herein." It may have been irregular to thus substitute one party for another in a final decree, but it was done upon defendant's application and by its consent, and it has no ground to complain that the error, if any, in the final decree for want of proper parties was corrected upon its own application before its bill of review was filed.

II. A. The first, second, fourth and fifth grounds of demurrer will be considered together. Upon the appeal from the decree of November 25, 1893, this court

considered and decided every question involved in the case at that time, and left nothing open for the decision of the Circuit Court. The Circuit Court, instead of obeying the mandate issued upon the judgment of this court, granted defendant leave to file a supplemental bill in the nature of a bill of review, and entertained jurisdiction of the bill filed in accordance with such leave. Upon appeal from an order overruling a demurrer to that bill, this court held that where an appellate court affirms a decree of the Circuit Court, or when such a decree is modified on appeal, either as to questions of law or fact necessarily involved, with directions for further proceedings consistent with the opinion, the Circuit Court has no authority to open the case for a new trial or to enter any other judgment than that directed to be entered, unless authority to do so is expressly given by the appellate court; that when the appellate court has examined the record of a cause, and affirmed the decree appealed from, or has modified or reversed such decree, with directions as to the decree to be entered, whether the decision was on questions of law or fact, it is not the province of the court *a quo* to allow further proceedings, but the judgment and mandate of the appellate court must be obeyed. Bloxham v. Florida Central & Peninsular Railway Co., 39 Fla. 243, 22 South. Rep. 697. This holding is not only in accordance with our Constitution and statutes, but it inevitably results from the inherent nature of courts of error and trial courts. The Supreme Court of this State is the final arbiter of all questions of law and fact properly presented to it by appeals from other courts. The superior authority of its judgments depends upon the jurisdiction of the court to render them, and not upon the question as to whether they are right or wrong. There is and can be no authority in an inferior court to correct

mistakes made by this court in its conclusions of fact, or its interpretation of the law. An appeal to a superior court to correct errors committed by an inferior one can not be followed by proceedings in the inferior to correct errors committed by the superior. If so litigation would be interminable, the superior would be subordinated to the inferior, and the judgments of the superior could only be enforced when they coincided with the judgments of the inferior. The defendant does not deny that this court had jurisdiction of the subject-matter and the parties, and to render the judgment rendered by us upon the first appeal. In its petition to file the bill of review defendant does not deny such jurisdiction, but it claims that this court reached a certain conclusion of fact necessary to be determined, by a wholly mistaken view of facts not in issue in the case, or submitted, and upon an interpretation of the statements of the bill entirely at variance with the facts as they existed, and the understanding and purport of such statements at the hearing below, and that this court ought to have found as a matter of fact from the allegations of the bill and the answer that defendant was an innocent purchaser of the lines of road assessed for taxes, and consequently not liable for same. It is insisted by the petition that these were errors of law apparent upon the face of the decree, and that for this reason the whole decree should be reviewed and reversed, and a decree entered directly the reverse of the one directed by this court. It is not contended that Judge White erred in any of his conclusions, but he is asked to find that this court did err, and to set aside its findings and judgment and substitute his own therefor. He is asked to invade our jurisdiction, to deny the authority and binding force of our judgments and to proceed to set them aside because he may think them wrong. It is

a familiar rule of law that one court in proceedings not appellate has no power to review or reverse, or disregard the judgment of another court of equal or even inferior authority for errors of law or fact not affecting jurisdiction. How much stronger do the reasons for such a rule become when allied to the judgments of superior courts. The Circuit Court was without power under any circumstances to set aside, reverse or annul the judgment of this court rendered upon the former appeal, or to review the decree entered in obedience thereto, for alleged errors of law or fact committed by us in rendering our judgment. The attempted exercise of such a power is subversive of that subordination which has been established by the Constitution. It not only assumes a jurisdiction nowhere granted to the Circuit Courts, but usurps that which appertains to this court, or some other to which an appeal may be taken. The question is not one of procedure, it is one of power; of jurisdiction over the subject-matter. When the mandate of this court goes to the court below, directing the entry of a specific judgment, that court has no discretion in the matter of obedience thereto. It is without power to say that the judgment was wrong; its duty, and only duty, is to obey the mandate. It is charged with no responsibility for the errors alleged to have been committed by this court, nor does it possess any power to correct them. For these reasons a bill does not lie in that court to review errors attributable to this court upon the face of a decree affirmed by it or one entered in pursuance of its mandate. Perry v. Tupper, 71 N. C. 380; Pinkney v. Jay, 12 Gill & J. 69; Stallworth v. Blum, 50 Ala. 46; Lore v. Hash, 89 Va. 277, 15 S. E. Rep. 549; Inman, Swann & Co. v. Foster, 72 Ga. 79; Meyer v. Johnson, 60 Ark. 50, 28 S. W. Rep. 797; Brewer v. Bowman, 3 J. J. Marsh, 492, S. C. 20 Am.

Dec. 158; Southard v. Russell, 16 How. 547; Kingsbury v. Buckner, 134 U. S. 650, 10 Sup. Ct. Rep. 638; Gaines v. Rugg, 148 U. S. 228, 13 Sup. Ct. Rep. 611; Dennison v. Goehring, 6 Pa. St. 402.

B. It is insisted that the Circuit Court in granting permission to file the bill of review was acting under the authority given by this court upon appeal from the order overruling the demurrer to the supplemental bill in the nature of a bill of review. In that case (39 Fla. 243, 22 South. Rep. 697) it was said that the petition for leave to file a supplemental bill in the nature of a bill of review, considered with the bill permitted to be filed in the lower court, could not be regarded as affording any sufficient ground for reviewing the judgment directed to be entered by this court under its mandate, if it had been entered, beyond the exemption of taxation in question of the line of railroad from Jacksonville to Chattahoochee. The court said: "We are satisfied from the entire record before us that there is sufficient shown to authorize this court to grant leave to appellee to be heard on an application in the Circuit Court to file a bill of review of the judgment when entered to the extent of the line of railroad and branches from Jacksonville to Chattahoochee, formerly known as the Florida Central & Western Railroad Company, and after a careful examination of all that has been disclosed we are of opinion that justice requires that an order be made in this court granting permission to appellee to be further heard in the Circuit Court to the extent mentioned on account of the alleged newly discovered matter." The leave granted the company did not extend to a review of the decree as to all of the defendant's property, nor as to errors committed by this court, but the leave was expressly confined to the line of road from Jacksonville to Chattahoochee and

branches, and extended no further than a review for newly discovered matters. In the same connection the Circuit Court was advised that it had no authority to entertain a bill to review the decree to be entered by it, unless the appellate court had given permission to one of the parties to apply for leave to file such a bill. When defendant applied for leave to file a bill to review the entire decree, it exceeded the permission granted it, and when the Circuit Judge granted leave to file such a bill he acted in disregard of a judgment of this court rendered in the same cause that such a bill could not be filed without leave first obtained from this court. This judgment had become *res judicata*, the principles announced in the opinion had become the law of the case binding alike upon the parties and the court. Wilson v. Fridenberg, 21 Fla. 386. Under these circumstances the relators remedy by appeal is inadequate as well as useless. The matter has already passed to final judgment in this court and if that judgment is enforced the proceedings in the Circuit Court in disregard thereof will cease. We are given power (Section 5, Article V, Constitution 1885) to issue all writs "necessary or proper to the complete exercise of" our jurisdiction. There is no doubt that the attempt to open up for review the decree entered in pursuance of our mandate, for errors committed by us, as well as the attempt to exercise jurisdiction over other features of the decree in disregard of our decision that such jurisdiction must not be exercised without leave first granted by this court, constitute an unwarranted interference with and disregard of the judgments of this court, for the correction of which prohibition is the proper remedy. State *ex rel* Wolferman v. Superior Court, 8 Wash. 591, 36 Pac. Rep. 443; Harriman v. County Commissioners, 53 Me. 83.

III. The third ground of the demurrer is untenable.

The order granting leave to file the bill of review does not show that relators were present when it was made. It recites that notice had been given them, which would indicate that they were not present. The notice served upon them stated that the application would be made under the permission granted by this court in its opinion and by its mandate sent down May 24, 1897, and the notice did not intimate that the application would be broader than the permission granted. At any rate the relators demurred to the bill filed, on the ground that it sought to review the decree as to lines of road other than those mentioneld in the order from this court granting leave, and this action of the relators followed by the suggestion for prohibition in this court, indicates very clearly that they have not waived their right to this remedy, nor given their consent for the Circuit Court to review the decree in respects not authorized by this court, even if such consent could give it jurisdiction so to do.

IV. As to the sixth ground of demurrer, the Circuit Court has already taken a step in the exercise of an assumed jurisdiction to review the decree for alleged errors of law and in other respects not authorized. The order made permitted the filing of a bill of review as prayed in the petition. The prayer of the petition was for leave to file a bill to review the decree for newly discovered evidence and the error in law appearing on the face of the decree. It appeared upon the face of the petition presented to the judge that the permission desired was to review the entire decree for errors committed by this court, and that permission had not been obtained from this court to review any part of the decree except that relating to the line of road from Jacksonville to Chattahoochee and branches, and that only for newly discovered matters. The petition on its face dis-

closed a lack of jurisdiction in the Circuit Court to grant part of the relief prayed, and instead of confining the leave to file the bill within the limits of the permission granted by this court, the Circuit Court granted the leave in accordance with the prayer of the petition, and thereby assumed and exercised authority denied by this court, and a jurisdiction clearly beyond its powers. Under these circumstances it was not necessary for relators to tender a plea to the jurisdiction in the Circuit Court and obtain a ruling thereon before resorting to the remedy by prohibition. Where the want or excess of jurisdiction relates to the subject-matter, and is apparent upon the face of the proceedings, and the court has made some order in the exercise of such unauthorized jurisdiction, as is the case here, prohibition will lie, even though no plea to the jurisdiction has been tendered. While there are some authorities to the contrary, we think this was clearly the rule of the common law, and, therefore, binding upon us. Wadsworth v. Queen of Spain, 17 Ad. & E. (N. S.) 215; Mayor v. Cox, L. R. 2 E. & I. App. Cas. 239; Farquharson v. Morgan, L. R. 1 Q. B. Div. 552; Swinburn v. Smith, 15 W. Va. 483; State v. Wilcox, 24 Minn. 143; United States v. Peters, 3 Del. 121; *Ex parte* Phenix Ins. Co., 118 U. S. 610, 7 Sup. Ct. Rep. 25.

V. It is insisted in argument that the suggestion does not deny that the Circuit Court has jurisdiction to review the decree to the extent of the line of road from Jacksonville to Chattahoochee with branches, for newly discovered matter, but that it prays for a prohibition against any further proceedings whatever upon the bill for review filed. It is claimed that the writ ought to be refused because if issued it must be as broad as the prayer therefor. In this case we might properly issue the writ in strict accordance with the prayer, be-

cause the bill filed does seek to review the whole decree for errors of law, which we have seen is wholly unauthorized. The rule in mandamus requires the peremptory to be as broad as the alternative writ (State *ex rel.* Moody v. Call, 39 Fla. 165, 22 South. Rep. 266), but we have found no authority for the proposition that the writ of prohibition must be refused if it is determined that it can not be granted to the extent prayed in the suggestion. It was held in Queen v. Local Government Board, L. R. 10 Q. B. Div., 309, that where a party applies for a prohibition, and asks the court to prohibit another court more than he ought to ask for, yet nevertheless if part of his request turns out to be well founded the court ought to mould the prohibition and to limit it to only so much of his request as is well founded. We think this is the true rule; and if we issue the writ in this case, it can be so framed as to prohibit only the excess of jurisdiction assumed by the Circuit Court; for prohibition lies to restrain an excess of jurisdiction, as well as to prevent a court from proceeding in a case where it has no jurisdiction whatever. State *ex rel.* Floral City Phosphate Co. v. Hocker, 33 Fla. 283, 14 South. Rep. 586.

The demurrer to the suggestion is overruled, with leave to defendant to plead on or before 10 o'clock A. M. Saturday, 30th inst.