THE STATE OF FLORIDA, EX REL., R. HUDSON BURR, NEW-
TON A. BLITCH AND ROYAL C. DUNN, AS RAILROAD COM-
MISSIONERS OF THE STATE OF FLORIDA, *Relators,* v THE
TAVARSE & GULF RAILROAD COMPANY, A CORPORATION,
*Respondent.*

### Opinion filed August 12, 1919.

1. It is the absolute duty of a common carrier railroad company
   to provide and maintain adequate and safe roadbed and
   track for the safe and efficient transportation of persons
   and property over its lines, and this duty cannot be avoided
   if it is possible to be performed.

2. A certificate showing a performance of the acts commanded
   to be done is the proper response to a peremptory writ of
   mandamus.

3. All defenses in mandamus proceedings should be presented
   to the alternative writ and are to be determined before the
   peremptory writ is awarded.

4. If a peremptory writ of mandamus cannot be enforced, it
   will not be issued.

5. A peremptory writ of mandamus will not be issued to require
   a railroad company to repair its roadbed and track "and

in doing so to have due regard for" an order of the rail-road commissioners giving details for reconstructing the entire line of the company's roadbed and track, especially where the financial inability of the company to comply with the order is admitted.

A case of original jurisdiction.

Motion denied.

*Dozier A. DeVane,* for Relators;

*W. J. Oven,* for Respondent.

WHITFIELD, J.—The alternative writ issued herein states in effect that respondent's railroad track is in an unsafe condition, that by Order 626 the Railroad Commissioners directed the repair of said track, and that respondent has not obeyed the order. The alternative writ as amended commands the respondent to "forthwith repair and put in a reasonably safe and suitable condition, and maintain the same in such condition, the road-bed, tracks, side-tracks, spur tracks and switches along your lines of railroad, by putting and maintaining the road-bed, track, side-tracks, spur tracks and switches in a reasonably safe and suitable condition, reasonably adequate to meet the requirements of the public service you have undertaken to perform, by replacing the defective crossties and trestle ties with sound ones, and by replacing and properly securing all defective and broken rails and all defective, broken or missing angle bars, switches and bolts, and by spiking the rails to crossties, and by putting the surface of the road in a reasonable state of evenness and smoothness, and in so doing to

have due regard for said Order No. 626, of the Railroad Commissioners of the State of Florida," or to show cause.

By answer the respondent, among other matters, avers "that while its road-bed, tracks, side-tracks, spur tracks and switches were not at the time of issuance of said writ in the best of repairs, yet it is at the present time doing, and will do, everything within its power and within reason to place the same in suitable condition for the proper transportation of freight and passengers over its said line of railroad and for the safe movement of its equipment thereon. That while its facilities, to-wit: its road-bed and track, has deteriorated in the last two or three years to some extent, the same was because of this respondent's utter inability to meet the high cost incident to such repairs, and particularly so because of the fact that its receipts have never equalled its disbursements, all of which will hereafter be more fully and clearly shown herein; that while its said road-bed and track were not then in the best of condition and were somewhat run down, yet this respondent denies that the same were then or are now unfit and unsuitable for the proper movement of its equipment and the proper transportation of freight and passengers thereover, and were not and are not a danger and menace to the lives and limbs of the passengers of the said railroad and the freight transported. This respondent has for the past two years operated over its said line of road only one train each way every week day, with no service on Sundays; and the schedule maintained by this respondent is one of a maximum speed of twelve miles an hour, which is sufficient to make all connections, and there are no other trains upon its line to be passed on sidetracks or switches, its said sidetracks and switches being used solely and only for the placing, handling,

loading and unloading of the cars handled by said train so
operated; that its passenger business always has been
nominal only, and is growing less because of automobile
competition, and no passenger has ever been injured on its
said line during its history of operation. This respondent
has been for the past several months, and is now, doing
everything within its power that can reasonably be done
to obtain the finances and the material with which to place
its said road-bed and track in a good, safe and satisfactory
condition for its service to the public, and it is using every
effort, as aforesaid, to the end of making and constructing
an even and regular surface on its said road-bed by adding
to the sound ties now upon its said line a sufficient num-
ber of new and sound ties, repairing its trestles, and
placing in proper places a sufficient number of rails, angle
bars and bolts; and this respondent expects within a rea-
sonable time to have any and all defects now existing in
said road properly repaired, but the same cannot be done
until it can secure the funds with which to do it and the
material which should be placed in said road to attain the
desired end. That during the past two years labor has
been exceedingly scarce and wages exceedingly high, rails
and rail fittings and fastenings have been exceedingly
hard to get if and when the same could be secured at all,
and ties have also been scarce and hard to get because of
the high price being paid for the same by Federal con-
trolled roads having a large organization for this purpose
and handling large orders with contractors, while short
lines can place only a small order in proportion to those
placed by the larger roads now under Federal control.
That at the time said order was made this respondent had
no funds in its treasury and small receipts from its operat-
ing income, and it had no available credit and no property

which it could pledge for credit except its road-bed, three engines (one of which is out of repair), two coaches, four section-hand motor cars, and its right-of-way and station houses, and no other property, all of which was bonded for the original cost of the construction of said road to the amount and extent of $299,000, said bonds drawing interest at five per cent. per annum, payable semi-annually, and covering all of the above property, and as to which said bonds this respondent has never been able to pay any interest thereon."

There are other averments as to the small business, the necessary expenses, lack of funds and credit, heavy indebtedness, and others matters indicating inability to repair the track other than is being done, and tending to show utter financial inability of the respondent to comply with the particular order which in effect requires a practical reconstruction of the entire track.

The relators move for a peremptory writ on the answer which in legal contemplation admits all the averments of the answer that are pertinent to the issue, *viz*, whether the answer is a legal defense to the writ.

It is the absolute duty of a common carrier railroad company to provide and maintain adequate and safe road-bed and track for the safe and efficient transportation of persons and property over its lines, and this duty cannot be avoided if it is possible to be performed. See State *ex rel.* Ellis v. Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213.

The answer is in the nature of a plea in confession and avoidance. What it confesses, however, is half denial, and what it offers in avoidance is largely by way of apology. As an example, the answer admits that the respondent's roadbed and track are "not in the *best* of condition," and

334     SUPREME COURT OF FLORIDA.

State ex rel. Burr et al. v. T. & G. R. R. Co.—Opinion of Court.

"were *somewhat* run down," yet it denies that the "same were then or are now *unfit* and *unsuitable* for the movement of *its* equipment and the proper transportation of freight and passengers thereon and were not and are not a danger and menace to the lives and limbs of the passengers of the said railroad and (to) the freight transported."

Aside from the patent ambiguity of this language we would consider this answer as wholly insufficient as a defense to an alternative writ of mandamus brought in behalf of the State by the Attorney General to compel the railroad to place its roadbed and track in a fit and suitable condition, or a writ brought in behalf of the State by the Railroad Commissioners to compel the railroad to comply with an order requiring the railroad to repair its roadbed and track, were it not for the averments as to financial inability to comply with the order. These averments as to the railroad's lack of funds, income and credit ability are offered as an excuse for the non-performance of its duty to the public. The defense may be sufficient in a mandamus proceeding to compel the performance of a specific duty, because mandamus will not lie to compel the performance of an act which it is beyond the power, physical, mental or financial, of the respondent to perform. Relator's counsel admitted, so we understood his oral argument, that the defense was good and could be offered to the peremptory writ; but should not be considered as a defense to the alternative writ. We think that the defense is sufficient when offered to the alternative writ. All issues should be made up in these and like proceedings upon the alternative writ, because of the alternative writ is the declaration in mandamus; it is the statement of the relator's cause of action.

Whatever is permissible as a defense may be averred by way of answer to the alternative writ.

In offering the plea of financial inability to perform its duty, the answer is construed as a plea in confession and avoidance. That is to say, the answer admits failure to discharge its duty to the public as a common carrier, but pleads by way of excuse or avoidance of the consequences in *mandamus* its financial inability. We do not hold, however, nor do we wish to intimate, that such pleas would be available in *quo warranto* for the forfeiture of the charter of the road, which may be brought when the railroad confesses its failure to perform its duties to the public or actually fails to perform such duties.

The mandatory part of the alternative writ does not conform to the order of the Railroad Commissioners and the Attorney General is not a party to the proceeding in behalf of the State. There was no demurrer, however, presenting the point and we pass it for the present.

A certificate showing a performance of the acts commanded to be done is the proper response to a peremptory writ of mandamus. State *ex rel.* Drew v. Board of State Canvassers, 16 Fla. 17; State *ex rel.* Bisbee Jr. v. Board of County Canvassers of Alachua County, 17 Fla. 9; 13 Ency. Pl. & Pr. 792. This being so all defenses to the writ should be presented to the alternative writ and are to be determined before the peremptory writ is awarded. The decision in Savannah & O. Canal Co. v. Shuman, 91 Ga. 400, 17 S. E. Rep. 937, is not in accord with this rule or with the weight of authority.

A peremptory writ of mandamus will be refused in all cases where the respondent can not be compelled to do all that is required by the alternative writ. State *ex rel.* Moody v. Call, Judge, 39 Fla. 165, 22 South. Rep. 266;

State *ex rel.* Ellis v. Atlantic Coast Line R. Co., *supra.* If a peremptory writ of mandamus cannot be enforced, it will not be issued. See County Com'rs of Duval County v. City of Jacksonville, 36 Fla. 196, 18 South. Rep. 339; State *ex rel.* Peck v. Bowden, 18 Fla. 17; 18 R. C. L. 139, 149; State *ex rel.* v. Dode City, M. & T. Ry. Co., 53 Kan. 329, 36 Pac. Rep. 747; City of Benton Harbor v. St. Joseph & B. H. St. Ry. Co., 102 Mich. 386, 60 N. W. Rep. 758; Ohio & M. Ry. Co. v. People, 120 Ill. 200, 11 N. E. Rep. 347.

Even if in any case a peremptory writ of mandamus would be issued commanding the respondent to perform a legal duty and in doing so to have due regard for the requirements of an order made by an administrative board, giving details for the entire line of the track of a railroad company, it will not be done in this case where the admitted averments of the respondent's answer show its inability to comply with the term of the order indicated.

Motion for peremptory writ denied with leave to take issue on the answer.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.